1

2

3

4                 **UNITED STATES DISTRICT COURT**

5                     **DISTRICT OF NEVADA**

6

7    DUANE JENSEN,                      )          2:03-CV-0229-RCJ-LRL
                                        )
                    Plaintiff,          )
8                                       )
           vs.                          )              **ORDER**
9                                       )
     LAS VEGAS METROPOLITAN POLICE      )
10   DEPARTMENT, a Municipal Corporation, SGT. )
     PATRICK KELLY, P# 4690 individually and in )
11   his Official Capacity as police officer of the Las )
     Vegas Metropolitan Police Department; and )
12   JOHN DOES I-X, inclusive,          )
                                        )
13                  Defendants.         )
     _____ )

14

15        Before the Court is Defendants' Motion for Summary Judgment (Document No. 50) and

16   Defendants' Motion to Strike (Document No. 62).  The Court has considered all of the pleadings on

17   file as well as oral argument heard before the Court.

18                             **BACKGROUND**

19        The Court has construed the record in the light most favorable to Plaintiff Duane Jensen and

20   enters the following findings of facts in support of the conclusions of law.  The Court notes that

21   Officer Jensen has been employed with the Las Vegas Metropolitan Police Department ("LVMPD"),

22   Detention Services Division, since March 7, 1991.

23        Over the course of his career, prior to the matters of import to this litigation, Officer Jensen

24   was described as a difficult officer, who on occasion experienced difficulty working effectively with

25   others.  Supervisors noted numerous conflicts between Plaintiff and fellow officers.  These conflicts

1   arose from his tendency to tell fellow officers how good he was at his job and to point out their

2   faults.  As a consequence, officers became defensive in his presence and did not want to work with

3   him.

4           Although Plaintiff originally claimed the seminal event in this case occurred on September

5   4, 2000, he changed that date to May 22, 2000, through an affidavit.  On that date, Plaintiff was

6   working on unassigned relief in the booking area.  At approximately 4:20 a.m. he was in cell Z9

7   searching it for contraband when Corrections Officer Frank Gabron entered the room and vomited

8   into a toilet.  Officer Jensen presumed Officer Gabron had utilized pepper spray (Capstun) due to

9   the violent physical reaction, but Plaintiff did not personally observe the use of any Capstun.

10          Later that morning, Officer Jensen was approached by Inmate Trustee Reinert who told him

11  that there was an inmate in holding cell Z9 requiring his immediate assistance.  Officer Jensen

12  responded to the cell and took a wheezing inmate to the nurse where the inmate received treatment

13  for an asthma attack.

14          Approximately two weeks later, Inmate Reinert told Officer Jensen about an incident of

15  alleged brutality between correction officers and the wheezing inmate.  Inmate Reinert claimed to

16  have seen an act involving the inappropriate use of pepper spray against this inmate and expressed

17  his concern regarding same.  In response, Officer Jensen told Inmate Reinert, if he wanted to report

18  it, the parties to whom he should deliver the report.

19          Officer Jensen never made a report regarding Inmate Reinert's belief that officers in the

20  booking area were utilizing Capstun inappropriately.

21          There were, at the time, two specific policies within LVMPD, Detention Services Division,

22  which directly addressed Offer Jensen's obligation in this situation.  The first is an LVMPD policy

23  which specifically mandates that officers file a report with Internal Affairs or a supervisor when

24  faced with knowledge of wrongdoing (or the possibility of wrongdoing) by a fellow officer.

25                                      Page 2 of  16

1  Standard Operating Procedure, SOP 14.00.00, mandates that corrections officers assist inmates in

2  filing complaints by directing them how complaints should be completed and by receiving the

3  complaints once they were placed in the appropriate format.

4    The actions of Officer Jensen, in speaking with Inmate Reinert and telling him how to bring

5  his complaints to the attention of the administration of the Detention Center were completely in

6  harmony with these policies and were in fact, required responses of Officer Jensen.

7    After receiving this direction from Officer Jensen, Inmate Reinert filed his complaint.  As

8  a result, an investigation was undertaken by Lt. Baker.  This investigation involved an interview with

9  all the participants, including Plaintiff.  In that interview, Plaintiff told his supervisors that the had

10  never seen Capstun being sprayed in the booking area.  He also indicated that when the inmate

11  trustee told him of seeing an officer utilize pepper spray in the hallway, his sole response was to give

12  the inmate the information needed to report that claim to the sergeant.  Defendants' Exhibit "Z" at

13  p. 3.  In fact, he claimed when he heard about the pepper spray being utilized, it never even crossed

14  his mind the officers had deliberately sprayed it.  He thought it was an accidental discharge.  *Id.*

15  Thus, Plaintiff's testimony is that he expressed neither agreement not disagreement with Inmate

16  Reinert's allegations but simply directed the inmate on the process to have his complaint received

17  by the Defendants.

18    This interview occurred in July of 2000 and Lt. Baker's investigation was completed by the

19  end of July 2000 with a finding of no sustained wrongdoing on the part of any officer involved in

20  the pepper spray incident.

21    Plaintiff admits that the established policy of LVMPD required him, if he became aware of

22  wrongdoing, alleged or otherwise, to report it.  By his own admission, he never made a report to

23  anyone about any alleged wrongdoing by any correctional officers in the booking area in May of

24  2000.

25               Page 3 of  16

On September 14, 2000, Plaintiff felt sufficiently impressed by his heroism in dealing with the inmate who was having an asthma attack to purchase a Rolex watch as a reward to himself, Accordingly, on September 18, 2000, he began to make arrangements for the purchase of such a watch.

After the Rolex had been purchased, rumors began to surface that Plaintiff purchased the watch from the girlfriend of an inmate.  If true, the allegation could have resulted in his termination. Plaintiff submitted to this Court the Affidavit of Charlene O'Rourke wherein she indicates if it was believed that Plaintiff had, in fact, purchased the Rolex under such conditions, policy required the matter be referred to Internal Affairs.

Corrections Assistant Darragh had a personal discussion with a woman who claimed she was in the process of selling the watch to Plaintiff and that her boyfriend who brokered the deal was an inmate at the facility.  Plaintiff himself admits a number of officers approached him and indicated they had heard similar rumors.

These rumors made their way to a sergeant at the Clark County Detention Center, Sgt. Patrick Kelly, who was required by policy to report the potential wrongdoing to Internal Affairs.  Sgt. Kelly was not Plaintiff's assigned supervisor.

Although the Rolex watch was purchased in late September of 2000, Sgt. Kelly didn't file a complaint with Internal Affairs until December 29, 2000.  Sgt. Kelly did not claim that he had any personal knowledge of the alleged misconduct, but rather listed officers, including CA Darragh, who were direct sources of the information that had been brought to Sgt. Kelly's attention.

Plaintiff admits that from the moment he had the communication with Inmate Reinert wherein he directed him on how to file a complaint about his alleged concerns, until December 29, 2000 when the Internal Affairs complaint was filed, he experienced no behavior which he describes

1    as being "retaliatory."  Specifically, Plaintiff had no alteration to his work schedule, no loss of

2    overtime, and had not been subject to an Internal Affairs investigation during all that time.

3         Plaintiff has alleged the filing of the Internal Affairs complaint by Sgt,. Kelly was not

4    motivated out of concern that Officer Jensen may have acted illegally, but instead as a retaliatory

5    move to punish him for speaking with Inmate Reinert.  The only evidence he provides for this is his

6    own statement, found in his affidavit in Opposition to the Motion for Summary Judgment, wherein

7    he states that Officers Gabron and Arizmendi (who were allegedly involved in the pepper spray

8    incident) were friends of Sgt. Kelly.

9         After the Internal Affairs complaint was filed, Sgt. Palasky became Plaintiff's sergeant.  As

10   a rookie sergeant, Sgt. Palasky's squad was the first from which officers would be pulled to fill

11   vacancies or other needs of the Detention Center.  Along these lines, Sgt. Palasky, and later Sgt.

12   Karkos (Sgt. Palasky's successor as Plaintiff's sergeant), occasionally assigned Plaintiff to areas of

13   need based on their belief that he was a capable and versatile officer.

14        At the same time, the Internal Affairs investigation was ongoing and the result of the

15   investigation was that the allegations were determined to be unfounded.  Plaintiff then requested that

16   Internal Affairs immediately shred the investigation.  Plaintiff's request was declined based on the

17   existence of LVMPD policy 5/101.43, which requires two years between the close of an investigation

18   and the destruction of a file.

19        Plaintiff claims that beginning in January of 2001, and continuing until January 19, 2002 he

20   was subjected to acts of retaliation in the form of denial of overtime opportunities and being assigned

21   to posts he considered to be less than desirable.  The date of January 19, 2002 was established by

22   Plaintiff's own direct testimony.

23        In reviewing the evidence showing  assignments Officer Jensen had during that period, the

24   record indicates that Plaintiff was assigned to posts he has unilaterally described as less than

25                                        Page 5 of  16

1   desirable only a maximum of 23 days from the beginning of the time period beginning on September

2   4, 2000 and continuing to January 19, 2002.   Many of these assignments were not full day

3   assignments but were temporary - such as covering for an officer who was at lunch.

4        Plaintiff has not challenged these numbers and has not provided the Court with evidence to

5   contradict the infrequency of these assignments.   These assignments were made by Sgt. Karkos and

6   Sgt. Palasky.  Plaintiff provided no evidence or argument to the Court that either Sgt. Karkos or Sgt.

7   Palasky had any ties to Sgt. Kelly, Officer Gabron, Officer Arizmendi, or to any other officer with

8   animus against the Plaintiff.

9                                           **ANALYSIS**

10  **I.      Motion to Strike Evidence and Exhibits in Plaintiff's Opposition to Pending Motion for**

11  **        Summary Judgment**

12       Defendants move to strike several exhibits, Exhibit 8 (Diagram A only) and Exhibit 9

13  (Memorandums dated May 23 and 24, 2005), attached to Plaintiff's Opposition to the Motion for

14  Summary Judgment (Document No. 57-1).   These exhibits were either never produced in the course

15  of discovery, or contain information which was not properly submitted to Defendants.   Therefore,

16  Defendants argue "the inclusion of such documents with the Opposition is inappropriate and in

17  violation of Plaintiff's obligations and, therefore, these documents should be stricken." (Document

18  No. 62-1 4.)

19       Pursuant to Fed. R. Civ. P. 26(a)(1), a party must provide copies or descriptions of all

20  documents which are in "possession, custody, or control of the party," which it "may use to support

21  its claims or defenses . . . ."   In addition, "[a] party is under a duty to supplement at appropriate

22  intervals its disclosures under [Fed. R. Civ. P. 26] if the party learns that in some material respect

23  the information disclosed is incomplete or incorrect and if the additional or corrected information

24  has not otherwise been made known to the other parties during the discovery process or in writing"

25                                        Page 6 of  16

1   then a supplement is required.  *Id.* at 26(e)(1).  Likewise, "[a] party is under a duty seasonably to

2   amend a prior response to an interrogatory, request for production, or request for admission if the

3   party learns that the response is in some material respect incomplete or incorrect and if the additional

4   or corrected information has not otherwise been made known to the other parties during the

5   discovery process or in writing."  *Id.* at 26(e)(2).

6          If a party fails to disclose under Fed. R. Civ. P. 26(a) "any other party may move to compel

7   disclosure and for appropriate sanctions."  *Id.* at 37(a)(2).  Pursuant to Rule 37, parties that fail to

8   disclose information required under Fed. R. Civ. P. 26(a) are barred from using that evidence at trail

9   or on a motion, unless the failure to disclose is harmless.  *Id*.  The Court may also impose additional

10  sanctions for such behavior including any of the sanctions authorized under Rule 37(b)(2)(A), (B),

11  and (C).  *Id.*

12         Discovery in this case originally ended on November 3, 2003.  After that time, Defendants'

13  filed a successful Motion for Summary Judgment which Plaintiff appealed to the Ninth Circuit.

14  After the matter was vacated and remanded, the Court reopened discovery for a period of thirty days,

15  allowing all parties to include whatever supplementation they felt necessary.  (Document No. 48.)

16  Although Defendants supplemented their discovery with additional documents, identification of

17  witnesses, and other matters which they claim were pertinent to Plaintiff's case, Plaintiff did not.

18  (Document No. 62-1 at Ex. A.)  Plaintiff did send a letter to Defendants regarding a potential

19  continued harassment (Document No. 62-1 at Ex. B.), but Plaintiff did not include Exhibit 8

20  (Diagram A) or Exhibit 9 with that letter.  Defendants responded to that letter April 4, 2007.  (*Id.* at

21  Ex. C.)  Plaintiff failed to provide these documents or records to Defendants during discovery. Other

22  than that one letter, no other supplementation from Plaintiff occurred.

23         Because Plaintiff failed to supplement discovery of the documents upon which he now relies,

24  Plaintiff did not adequately disclose information required by Fed. R. Civ. P. 26(a), pursuant to Fed.

25                                    Page 7 of  16

1  R. Civ. P. 37.  Therefore, the issue is whether Plaintiff had substantial justification for this failure,

2  and if not, whether such failure was "harmless."

3       **A.    Substantial Justification**

4       Defendants contend they had no way of knowing of the existence of Diagram A in exhibit

5  8, or of its relationship in the instant matter.  However, Plaintiff contends that "it is obvious the

6  document is a continuation of the harassment."  (Document No. 67.)  Plaintiff further argues that

7  "Plaintiff's counsel notified Defendants' counsel of the continued harassment" in the letter it sent

8  on March 29, 2007, with Exhibit 8, Diagram B attached.  *Id.*  Nevertheless, even if the diagram could

9  be construed as a further showing of continuing harassment, it is not substantial justification for

10 failure to provide access to Exhibit 8 (Diagram A) to Defendants.  Merely providing Defendants with

11 a letter regarding the continuing harassment of Plaintiff without supplementing with supporting

12 documents is not enough to meet the requirement of substantial justification.

13      Defendants further contend Exhibit 9 should be stricken from evidence, claiming it was not

14 produced during discovery.  Plaintiff argues Exhibit 9 consists of two memos "that are and or should

15 be part of Plaintiff's personnel file which Defendants clearly have access to."  (Document No. 67.)

16 Plaintiff further argues that Defendants should also be required to supplement the discovery requests

17 pursuant to Fed. R. Civ. P. 26(a)(1) because they had equal access to the documents.  Accordingly,

18 Exhibit 9 will not be stricken from evidence because Defendants should have had equal access to

19 Plaintiff's personnel file.

20      Finally, Plaintiff's main justification provided for not disclosing both Exhibits is

21 inadvertence.  Plaintiff's counsel claims that it prepared a Fed. R. Civ. P. 26.1 supplement on or

22 about May 9, 2007, following the settlement conference.  First, the Court takes notice that the

23 settlement conference was after the close of discovery.  Disclosure at that time still would have been

24 untimely.  Second, the Court is unpersuaded that the alleged inadvertence would substantially justify

25      Page 8 of  16

1  the untimely disclosure of the documents.  Therefore, the Court finds substantial justification for

2  disclosing Exhibit 9 only, and not Exhibit 8 (Diagram A).

3  **B.    Harmlessness**

4  Having failed to provide a "substantial justification" for failing to provide the required Fed.

5  R. Civ. P. 26 disclosure for Exhibit 8 (Diagram A), Plaintiff's only recourse is to show that this

6  failure was "harmless."  The Ninth Circuit has expressly held that "the burden is on the party facing

7  sanctions to prove harmlessness."  *Yetti by Molly v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107

8  (9th Cir. 2001).

9  Plaintiff contends that despite this inadvertence, there is no arguable irreparable harm to

10  Defendants and no prejudice.  With respect to Exhibit 8 (Diagram A), the failure to properly disclose

11  that document is not harmless.  The disclosure of new evidence after the close of discovery limits

12  Defendants' ability to respond to that evidence.  If the Court were to allow such late production,

13  Defendants could reasonably require new depositions, re-depositions, and the identification and

14  disclosure of additional documents.  The production of new evidence after the close of discovery

15  prejudices the Defendants by hampering their ability to defend themselves from Plaintiff's

16  allegations.  For these reasons, Exhibit 8 (Diagram A) is ordered stricken.  .

17  **II.    Defendants' Motion for Summary Judgment**

18  **A.    Summary Judgment Standard**

19  The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as

20  to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th

21  Cir. 1994).  The moving party is entitled to summary judgment as a matter of law where, viewing

22  the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine

23  issues of material fact in dispute. Fed. R. Civ. P. 56©; *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th

24

25

Page 9 of  16

1   Cir. 1996).  Where reasonable minds could differ on the material facts at issue, summary judgment

2   is not appropriate.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

3          The moving party bears the burden of informing the court of the basis for its motion, together

4   with evidence demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v.*

5   *Catrett*, 477 U.S. 317, 323, (1986).  Once the moving party has met its burden, the party opposing

6   the motion may not rest upon the mere allegations or denials of his pleadings but must set forth

7   specific facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby. Inc.,* 477

8   U.S. 242, 248 (1986).

9          In evaluating the appropriateness of summary judgment, three steps are necessary: (1)

10  determining whether a fact is material; (2) determining whether there is a genuine issue for the trier

11  of fact, as determined by the documents submitted to the court; and (3) considering evidence in light

12  of the appropriate standard of proof.  *Id.*  As to materiality, only disputes over facts that might affect

13  the outcome of the suit under the governing law will properly preclude the entry of summary

14  judgment.  Factual disputes which are irrelevant or unnecessary will not be considered.  *Id.*  Where

15  there is a complete failure of proof concerning an essential element of the nonmoving party's case,

16  all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of

17  law.  *Celotex*, 477 U.S. at 323.  Summary judgment is not a disfavored procedural shortcut, but an

18  integral part of the federal rules as a whole.  *Id*.

19      **B.      Section 1983 Deprivation of First Amendment Rights**

20         Plaintiff alleges that Defendants violated his First Amendment right to free speech by

21  retaliating against him for his statement to Reinert – suggesting that Reinert report Officer Gabron's

22  inappropriate use of Capstun on inmate McLemore.  Pursuant to the First Amendment, a public

23  employee's rights to speak as a citizen when addressing matters of public concern are protected

24  under certain circumstances. *Pickering v. Board of Ed. of Township High Sch. Dist. 205, Will Cty.,*

25                              Page 10 of  16

1   391 U.S. 563, 568, (1968).  In *Garcetti v. Ceballos*, 126 S. Ct. 1951, 1958 (2006), the Supreme

2   Court identified two inquiries courts should use when assessing the constitutional protections of

3   speech made by public employees.  First, courts should determine "whether the employee spoke as

4   a citizen on a matter of public concern.  If the answer is no, the employee has no First Amendment

5   cause of action based on his or her employer's reaction to the speech.  If the answer is yes, then the

6   possibility of a First Amendment claim arises." *Id.* (internal citations omitted).  Second, the question

7   then "becomes whether the relevant government entity had an adequate justification for treating the

8   employee differently from any other member of the general public." *Id.* (internal citations omitted).

9   For the reasons stated below, Plaintiff has failed to establish the elements of his First Amendment

10  claim.

11       First, Plaintiff's statement to Reinert, suggesting that Reinert report Officer Gabron's

12  inappropriate use of Capstun on inmate McLemore, did not amount to constitutionally protected

13  speech.  For an employee's speech to be constitutionally protected, it must address a matter of public

14  concern. *Connick v. Myers*, 461 U.S. 138, 147-48 (1983).  Whether an employee's speech is of

15  "public concern" is a question of law. *Nunez v. Davis*, 169 F.3d 1222, 1226 n.1 (9th Cir. 1999).

16       The Supreme Court recently held that "when public employees make statements pursuant to

17  their official duties, the employees are not speaking as citizens for First Amendment purposes, and

18  the Constitution does not insulate their communications from employer discipline." *Garcetti*, 126

19  S. Ct. at 1960.  In *Garcetti*, a deputy district attorney from the LA County District Attorney's Office

20  conducted an investigation regarding alleged inaccuracies in a search warrant.  Based on his

21  investigation, he submitted a memorandum stating the case should be dismissed and criticized the

22  actions of the police officers involved.  His supervisors refused to dismiss the case and, in a

23  subsequent motion hearing, the district attorney testified as a criminal defense witness.  As a result,

24

25                                                Page 11 of 16

1    he claimed that he was subject to a series of retaliatory employment actions.  The Court, as indicated,

2    held his actions were done pursuant to his job responsibilities and, therefore, a First Amendment

3    analysis could not be applied.  *Garcetti*, 126 S. Ct. at 1960.  Therefore, the controlling factor in

4    analyzing whether a public employee's speech is protected under the First Amendment is whether

5    the statement was made by the employee as part of his or her official duties.  *Id.* at 1959-60; *see also*

6    *Freitag v. Ayers,* 468 F.3d 528, 543 (9th Cir. 2006).

7            In this case, the speech at issue is Plaintiff's statement to Reinert, suggesting that Reinert

8    report Officer Gabron's inappropriate use of Capstun on inmate McLemore.  The Court looks to both

9    the policies and procedures of the LVMPD and the Clark County Detention Center during the time

10   in question.  (Document No. 50, Ex. W, Ex. X.)  According to those policies, officers have the duty

11   to report wrongdoing of other officers and, more importantly, to assist inmates in filling out

12   complaints if they believe they have witnessed wrongdoing.  *Id.*  Plaintiff assisted Reinert by telling

13   him to report the incident, which falls under the official duties of his employment.  *See Garcetti*, 126

14   S. Ct. at 1959-60; *Freitag,* 468 F.3d at 543.  Therefore, the speech is question is not constitutionally

15   protected because it was made by Plaintiff as part of his official duties.

16           As noted in *Garcetti*, whether the speech is protected under the First Amendment no longer

17   hinges on private/public distinction.  *Garcetti*, 126 S. Ct. at 1959.  As long as the speech is part of

18   the employee's official duties, there is no protection under the First Amendment.  *Id.* at 1960.  Here,

19   Plaintiff's speech was conducted as part of his official duties and thus is not constitutionally

20   protected.

21   **C.       State Law Claims**

22

23           This action was removed to this Court by Defendants pursuant to the provisions of 28 U.S.C.

24   1441(b), in that it is a civil action with claims arising under the Constitution and laws of the United

25                                             Page 12 of  16

1    States, under 42 U.S.C. § 1983.  Because the motion for summary judgment was vacated and

2    remanded back to this Court in part for not addressing the state law claims, each of the state law

3    claims are discussed below.

### 1.    Fraud/Abuse of Process claim against Defendant Kelly

Plaintiff originally claimed that Defendant Kelly engaged in fraud, but has now changed the claim to an abuse of process claim.  Abuse of process is similar, but not identical, to malicious prosecution.  While abuse of process hinges on the misuse of regularly issued process, malicious prosecution rests on the wrongful issuance of process.  *Nev. Credit Rating Bureau, Inc. v. Williams*, 503 P.2d 9, 12 (1972).

In Nevada, the elements of an abuse of process claim consist of (1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding. *Executive Mgmt., Ltd. v. Ticor Ins. Co.*, 963 P.2d 465, 478 (1988).  Plaintiff claims the IAB complaint filed against him was to punish and retaliate against him for telling inmate Reinert that he should report the alleged misconduct of Officer Gabron.  However, as discussed above, Plaintiff has not demonstrated a genuine issue of material fact that Sgt. Kelly had any ulterior purpose in submitting the complaint to Internal Affairs.  Several officers informed Kelly that Plaintiff bought the Rolex from an inmate's girlfriend.  Although Sgt. Kelly did not have any personal knowledge of the matter, he submitted the information he received from other officers, as well as the sources of his information to Internal Affairs.  If Plaintiff had bought the watch from an inmate's girlfriend, that action could have resulted in Plaintiff's termination. (Document No. 50, Ex. I).  Internal Affairs properly investigated the matter and exonerated Plaintiff.  The abuse of process claim is dismissed.

In the alternative, Plaintiff's claim may be for fraud.  To prove fraud under Nevada law, a plaintiff must demonstrate by clear and convincing evidence a false representation of material fact,

25    Page 13 of  16

1   known to be false, which was made with the intent to induce reliance.  *Hartford Acc. Indem. Co. v.*

2   *Rogers*, 613 P.2d 1025 (1980); *Sanguinetti v. Strecker*, 577 P.2d 404 (1978); *Lubbe v. Barba*, 540

3   P.2d 115 (1975)

4           Plaintiff's claim for fraud is directed only against Sgt. Kelly.  While Sgt. Kelly admits he did

5   not have personal knowledge regarding the watch incident, Plaintiff has not presented a genuine

6   issue of fact that Sgt. Kelly actually knew the allegations concerning Plaintiff were false.  Thus,

7   Plaintiff's claim for fraud against Sgt. Kelly cannot stand and must be denied.

8           **2.      Malicious Prosecution**

9           For malicious prosecution to exist, there must be a wrongful issuance of some legal process.

10  *See Nev. Credit Rating Bureau, Inc. v. Williams*, 503 P.2d 9, 12 (1972).  To sustain his claim,

11  Plaintiff must establish a lack of probable cause to initiate the underlying action, malice, a victory

12  for the Plaintiff in the underlying case, and proximately caused damages.  *Miller v. Schnitzer*, 371

13  P.2d 824 (1962).

14          In this case, Plaintiff was never prosecuted.  He was never subjected to criminal charges.  At

15  most, he was subjected to an IAB investigation from which he was vindicated.  Moreover, Sgt. Kelly

16  had probable cause to make the complaint and was required to do so under LVMPD policy.  Sgt.

17  Kelly articulated the grounds for his concern, and these are sufficient to establish probable cause to

18  at least report the information to Internal Affairs.  Since an Internal Affairs Investigation is not a

19  "prosecution," it still falls below the standard necessary to receive recompense under this claim and

20  therefore the Court will grant summary judgment on this claim.

21          **3.      Emotional Distress**

22  To establish a prima facie case of intentional infliction of emotional distress, a Plaintiff must

23

24

25                                      Page 14 of  16

1   establish (1) extreme or outrageous conduct with the intent of, or reckless disregard for, causing

2   emotional distress; (2) severe or extreme emotional distress; and (3) actual or proximate causation.

3   *Mackintosh v. Cal. Fed. Sav. & Loan Ass'n*, 935 P.2d 1154, 1164 (Nev. 1997).  In *Chowdry v.*

4   *NLVH, Inc.*, 851 P.2d 459, 462 (1993), the Nevada Supreme Court stated "the less extreme the

5   outrage, the more appropriate it is to require the evidence of physical injury or illness from emotional

6   distress."

7   Here, the Court finds as a matter of law based on the evidence before it that there was no

8   extreme or outrageous conduct on the part of Sgt. Kelly in filing his report with Internal Affairs.

9   Moreover, the giving of less-than-desirable post assignments 23 times over the period of a year

10   simply is not extreme and outrageous, nor can the court infer an intent to inflict emotional distress

11   from Defendants' behavior.

12   Summary judgment is appropriate on Plaintiff's claim for intentional infliction of emotional

13   distress because there was no extreme or outrageous action on the part of the Defendants, and no

14   intent to inflict emotional distress.

15            **4.    Conspiracy**

16

17   In opposing the Motion for Summary Judgment (Document No. 50) Plaintiff raised the issue

18   of conspiracy, but did not make such an allegation in his complaint.  Since conspiracy was not a part

19   of the Complaint, no claim of conspiracy can now stand against Defendants.

20       **D.    Defendants' Qualified Immunity Affirmative Defense**

21   Sgt. Kelly also claims that he is not liable under the doctrine of qualified immunity.  The

22   Court must assess three inquiries in the qualified immunity test:

23       (1) the identification of the specific right allegedly violated; (2) the determination of
         whether that right was so "clearly established" as to alert a reasonable officer of its

24

25                          Page 15 of  16

constitutional parameters; and (3) the ultimate determination of whether a reasonable officer could have believed lawful the particular conduct at issue.

*Romero v. Kitsap County*, 931 F.2d 624, 627 (9th Cir. 1991).  The first two inquiries are "pure questions of law." *Id.* at 627.  First, the Court must address whether there is a constitutional violation, and then determine whether that right was clearly established or not.  *Siegert v. Gilley*, 500 U.S. 226 (1991).  As discussed in the analysis above, the actions of Sgt. Kelly were not in violation of the constitution.  Sgt. Kelly did not impose any discipline upon Plaintiff; he simply reported the alleged conduct of Plaintiff, which if true, would be wrongful.  Therefore, the second prong can also be dismissed.  Finally, Plaintiff has not provided evidence to show that there is a genuine issue of material fact regarding whether a reasonable officer could have believed the conduct at issue was lawful.  Therefore, as a matter of law, Sgt. Kelly is entitled to qualified immunity.

## CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendants' Motion to Strike (Document No. 62) is *granted in part* and *denied in part*, Exhibit 8, Diagram A is stricken from the record. IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (Document No. 50) is *granted in full*.

DATED: March 14, 2008

_____
ROBERT C. JONES
UNITED STATES DISTRICT COURT JUDGE

(mr)

Page 16 of 16